James B. Zouras (will apply *pro hac vice*)
Ryan F. Stephan (will apply *pro hac vice*)
Teresa M. Becvar (will apply *pro hac vice*)
Catherine T. Mitchell (will apply *pro hac vice*)
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
cmitchell@stephanzouras.com

Daniel Bonnett (AZ#014127
Michael Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carolyn Bledsoe, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>V.<br><br>LHC Group, Inc,<br><br>        Defendant. | Case No: _____<br><br>PLAINTIFF'S CLASS ACTION AND COLLECTIVE ACTION COMPLAINT<br><br>(JURY TRIAL DEMANDED) |

*Plaintiff's Original Complaint—Class and Collective Action*

Plaintiff, on behalf of herself and all other similarly situated employees alleges:

1. Plaintiff brings this action to redress Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Arizona wage statute, A.R.S. § 23-350 *et seq.,* ("AWS"), by knowingly classifying its home health Clinicians as overtime exempt and knowingly failing to pay them any overtime premium wages for the overtime work they performed despite knowingly paying them pursuant to a hybrid "per visit" and hourly pay scheme that is plainly inconsistent with their classification as overtime exempt.

2. Plaintiff Bledsoe brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as home health Clinicians for Defendant at any point during the maximum limitations period (the "FLSA Class").

3. Plaintiff Bledsoe brings her Arizona claims as a class pursuant to Fed. R. Civ. P. 23 for all Arizona residents who worked as home health Clinicians for Defendant at any point during the maximum limitations period ("The Arizona Class").

## **JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that claims under the FLSA: "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's Arizona claim pursuant to 28 U.S.C. § 1367 because this claim arises from the same occurrence or transaction as Plaintiff's FLSA claim and is so related to this claim as to form part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff Bledsoe resides in this District, Plaintiff Bledsoe worked for Defendant in this District, Plaintiff Bledsoe suffered the losses at issue in this District, Defendant has

significant business contacts in this District, Defendant is alleged to have engaged in the wrongful conduct at issue in this District and actions and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Carolyn Bledsoe is a resident of Arizona who resides in Yavapai County. From May 2017 to July 2018, Plaintiff Bledsoe worked as a Registered Nurse for Defendant, performing home health care services in this District. Beginning in early 2018, Defendant paid Plaintiff on a combined "per-visit" / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Bledsoe is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

9. Plaintiff Bledsoe has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). *See* Consent Form (Exhibit A).

10. LHC, Group, Inc., ("Defendant") is a corporation with its headquarters located at 901 Hugh Wallis Road South in Lafayette, Louisiana. Defendant's core business involves the provision of home health care services in at least 36 states, including multiple locations in Arizona. As discussed more fully below, Defendant is directly responsible for the operation of its home health care business, and for the policies, practices, and conduct at issue in this case.

## BACKGROUND FACTS

11. This action arises out of Defendant's systematic, company-wide wrongful classification of Plaintiff and other similarly situated home health Clinicians as exempt from the overtime compensation requirements of the FLSA and Arizona wage law. The affected employees worked for Defendant as Registered Nurses, Physical Therapists, Occupational Therapists, Speech Therapists, and in other similarly-designated skilled care positions (collectively "Clinicians"), whose primary duties involved providing health care services to patients in their homes.

12. For an employer to properly designate an employee as exempt from statutory overtime compensation requirements, it must affirmatively establish that the employee performs job duties that meet one of the statutorily-defined exemptions and that the employee is paid on either a salary-basis or a fee-basis.

13. Defendant's uniform pay plan does not provide Plaintiff and its other Clinicians with a guaranteed salary. During the relevant statutory period, Defendant has maintained a corporate policy and practice of paying Clinicians pursuant to a compensation method which includes "per visit" payments for some work, hourly payments for other work, and no payments whatsoever for other work performed outside of the time spent in the patients' homes.

14. Defendant pays Clinicians on a "per visit" basis for time spent visiting patients based on a set visit rate for each visit completed of a certain type. For example, all routine visits are paid at a Clinician's routine visit rate, and start of care, initial evaluation, recertification visits, and attempted visits are paid at other set rates. These visit rates are based on the amount of documentation time required for each type of visit, and thus home visits that require more documentation are paid at higher rates.

15. Defendant pays Clinicians at an hourly rate of pay for time spent on certain tasks, including but not limited to, time spent in staff meetings, case conferences, mentoring, compliance training and marketing. Clinicians are also paid an hourly rate when they take paid time off (PTO) and on holidays.

16. Defendant does not pay Clinicians any sums for a multitude of other work tasks they are routinely required to perform outside of the time spent in patients' homes, including but not limited to, completing documentation of patient visits ("charting"), preparation time for visits, communications with patients, physicians and case managers about scheduling, patient-care and logistical matters, coordinating patient care with other providers, travelling between patients' homes or ordering, organizing and retrieving equipment and supplies used during their home visits, and for registered nurses, time spent

dropping off lab specimens and following up on lab work.

17. Defendant's hybrid "per visit" and hourly wage scheme does not meet either the salary-basis requirement or the fee-basis requirement, meaning that Defendant has no valid basis to classify Plaintiff or its other Clinicians as overtime exempt and, therefore, wrongly deprived these employees of legally-required overtime wages.

18. Defendant routinely suffered and permitted Plaintiff and its other Clinicians to spend more than forty hours per workweek on the various work-related tasks described above.

19. Defendant did not maintain accurate contemporaneous records of all the hours Plaintiff and its other Clinicians worked, and did not require any Clinician, including Plaintiff, to maintain such records.

20. Defendant knew or should have known that Plaintiff and its other Clinicians were working more than 40 hours per week, because it assigned the work they performed; it tracked their performance of this work; and it required all Clinicians to complete extensive paperwork detailing their work and when it was completed.

21. Defendant knew or should have known that Plaintiff and its other Clinicians should have been classified as non-exempt employees because it was responsible for implementing and managing the hybrid "per visit" and hourly wage compensation system that paid them on a per-visit basis for certain work, an hourly basis for other work, and no wages at all for other required tasks.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22. Plaintiff brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as home health Clinicians for Defendant at any point during the maximum limitations period (the "FLSA Class").

23. Plaintiff belong to the FLSA Class she seeks to represent, because:

   a. She worked as a home health Clinician for Defendant during the relevant period and had similar job duties to the other FLSA Class members;

      b.     She received the same training from Defendant and were required to comply with the same wage and hour policies;

      c.     Defendant classified Plaintiff as exempt from the FLSA's overtime compensation requirements;

      d.     Plaintiff's wages were calculated and paid based on Defendant's hybrid "per visit" and hourly wage pay scheme that included fixed, per-visit payments for some work, hourly payments for other work, and no compensation at all for other required tasks;

      e.     Defendant routinely suffered and permitted Plaintiff to work more than forty hours per workweek;

      f.     Defendant did not maintain accurate contemporaneous records of all the hours Plaintiff worked, and did not require any Clinician, including Plaintiff to maintain such records;

      g.     Defendant knew Plaintiff was working more than 40 hours per week, because it assigned the work they performed, tracked her performance of this work and required her to complete extensive paperwork detailing her work and when it was completed; and

      h.     Defendant did not pay Plaintiff for any overtime premium wages for any of the work she performed beyond forty hours in any work week.

24.     Although Plaintiff and the FLSA Class members may have worked in different states or under different managers, this action may be properly maintained as a collective action because, among other things:

      a.     They worked under the same material terms and conditions of employment;

      b.     They were all classified as exempt from statutory overtime wage requirements;

      c.     They performed the same job duties and had the same job-related

responsibilities;

d. They received common training about their employment and the wage and hour policies and practices at issue here;

e. They were governed by the same timekeeping policies, practices and systems;

f. They were governed by the same compensation policies, practices and systems;

g. They were governed by the same policies, practices and systems concerning work hours and the performance of their work; and

h. They were governed by the same policies, practices and systems concerning overtime hours and wages.

25. Plaintiff and the FLSA Class members do not meet any test for exemption under the FLSA.

26. Plaintiff estimates that the FLSA Class, including both current and former employees over the relevant period, will include thousands of members. The precise number of FLSA Class members will be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

### ARIZONA CLASS ACTION ALLEGATIONS

27. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of herself and all other similarly situated Clinicians who worked for Defendant in Arizona at any point during the maximum limitations period (the "Arizona Class").

28. Plaintiff and other similarly situated Clinicians all worked under common employment policies, were subject to the same compensation scheme, and were subject to the same practices challenged in this action as described above.

29. Plaintiff belongs to the Class she seeks to represent because she:

a. Is a resident of Arizona;

b. Worked under the same material terms and conditions of employment as the Arizona Class members;

c. Was classified as exempt from statutory overtime wage requirements like the Arizona Class members;

d. Performed the same job duties and had the same job-related responsibilities as the Arizona Class members;

e. Received the same training about her employment and the wage and hour policies and practices at issue here as the Arizona Class members;

f. Was governed by the same timekeeping policies, practices and systems as the Arizona Class members;

g. Was governed by the same compensation policies, practices and systems as the Arizona Class members;

h. Was governed by the same policies, practices and systems concerning work hours and the performance of their work as the Arizona Class members; and

i. Was governed by the same policies, practices and systems concerning overtime hours and wages as the Arizona Class members.

### Class Definition

30. Plaintiff seeks certification of an Arizona Class consisting of the following individuals:

All individuals who currently work, or have worked, for Defendant as a home health Clinician in Arizona, within the applicable statute of limitations.[1]

### Numerosity

---

[1] Plaintiff reserves the right to propose a different class definition or include sub-classes, if appropriate, after the completion of discovery. Further, in Arizona, the statute of limitations period is one year. A.R.S. § 12-541.

31. More than 40 Clinicians were employed by Defendant in Arizona who were subject to the same practices challenged in this action as alleged above and not paid overtime compensation for all time worked in excess of 40 in given workweeks. Accordingly, Plaintiff satisfies the numerosity requirements as the Arizona Class is so numerous that joinder of all members is impracticable.

32. Members of the proposed Arizona Class can be identified and located using Defendant's payroll and personnel records. Members of the Arizona Class may be informed of the pendency of this action by direct mail, electronic mail, text message, and/or published and broadcast notice.

### Common Questions of Fact or Law

33. There are questions of fact and law common to the Arizona Class members which predominate over questions affecting only individual members, if any. Plaintiff, the members of the Arizona Class, and Defendant have a commonality of interest in the subject matter and the remedy sought.

34. If individual actions were required to be brought by each member of the Arizona Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the Arizona Class, and to the Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Arizona Class is entitled.

### Typicality

35. Plaintiff's claims are typical of the claims of the Arizona Class's members. As a result of Defendant's unlawful conduct, Plaintiff suffered similar injuries as those suffered by other members of the Arizona Class she seeks to represent.

### Adequacy

36. Plaintiff is an adequate representative of the Arizona Class she seeks to represent because she is a member of the Arizona Class, and her interests do not conflict with the interests of the other members of the Arizona Class. The interests of each Arizona

Class member will be fairly and adequately protected by Plaintiff and her undersigned counsel. Plaintiff has hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

### **Superiority**

37. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable given that, among other reasons, Defendant operates multiple locations throughout Arizona. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

38. Moreover, as the damages suffered by each Arizona Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Arizona Class member to bring individual claims.

39. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of each Arizona Class's members to protect their interests.

**COUNT I**
**FAIR LABOR STANDARDS ACT SECTION 207**
**DEFENDANT'S FAILURE TO PAY EARNED OVERTIME**

40. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

41. Defendant is an "Employer" as defined by 29 U.S.C. § 203(d).

42. The wages Defendant paid to Plaintiff Bledsoe and the FLSA Class members are "Wages" as defined by 29 U.S.C. § 203(m).

43. Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

44. Plaintiff Bledsoe and the FLSA Class members are "Employees" as defined by 29 U.S.C. § 203(e)(1).

45. Plaintiff Bledsoe and the FLSA Class members are similarly-situated individuals within the meaning of 29 U.S.C. §216(b).

46. 29 U.S.C. § 207(a)(1) provides that, with certain exceptions not applicable here, non-exempt employees must be paid an overtime premium rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

47. 29 U.S.C. § 211(c) expressly requires employers to maintain accurate time records of the work performed by their employees.

48. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employers' failure to comply with its requirements.

49. Throughout the relevant period, Defendant was obligated to comply with the FLSA's requirements, Plaintiff Bledsoe and the FLSA Class members were covered employees entitled to the FLSA's protections, and Plaintiff Bledsoe and the FLSA Class members were not exempt from receiving wages required by the FLSA for any reason.

50. Defendant wilfully violated the FLSA by knowingly classifying Plaintiff Bledsoe and the FLSA Class members as exempt from the FLSA's overtime pay provision despite knowing that its hybrid wage scheme does not meet either the salary basis requirement or the fee basis requirement.

*Plaintiff's Original Complaint—Class and Collective Action*

51. Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly suffering or permitting Plaintiff Bledsoe and the FLSA Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

52. Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to pay Plaintiff and the FLSA Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

53. Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Bledsoe and the FLSA Class members worked.

54. Plaintiff Bledsoe and the FLSA Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime wages owed for work they performed from which Defendant derived a direct and substantial benefit.

55. Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Bledsoe and the FLSA Class members all wages mandated by the FLSA.

## COUNT II
## ARIZONA WAGE STATUTE
## FAILURE TO PAY OVERTIME WAGES
## UNDER ARIZONA LAW

56. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

57. Plaintiff Bledsoe and other similarly situated home health Clinicians that currently work or worked for Defendant in Arizona during the applicable statute of limitations period (the "Arizona Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

58. The unpaid wages at issue in this litigation are "Wages" as defined by A.R.S. § 23-350.

59. Defendant is an "Employer" as defined in A.R.S. § 23-350.

60. Plaintiff Bledsoe and the Arizona Class members are "Employees" as defined by A.R.S. § 23-350.

61. A.R.S. §23-351(A) provides, in relevant part, that employers must designate "two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees."

62. A.R.S. § 23-351(C) provides, in relevant part, that employers must pay employees all wages due to the employee on each regular payday.

63. A.R.S. § 23-351(C)(3) further provides, "Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

64. A.R.S. § 23-352 provides, in relevant part:

No employer may withhold or divert any portion of an employee's wages unless one of the following applies:
(1) The employer is required or empowered to do so by state or federal law;
(2) The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to

the employer or a court orders otherwise; and
(3) There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee."

65. A.R.S. § 23-355(A) provides that if an employer, in violation of the AWS, fails to timely pay wages due, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of unpaid wages.

66. A.R.S. § 23-355 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the AWS's requirements.

67. Throughout the relevant period, Defendant was obligated to comply with the AWS's requirements, Plaintiff Bledsoe and the Arizona Class members were covered employees entitled to the AWS's protections, and Plaintiff Bledsoe and the Arizona Class members were not exempt from receiving wages required by the AWS for any reason.

68. Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly classifying Plaintiff Bledsoe and the Arizona Class members as exempt under the FLSA which has resulted in an underpayment of wages and violation of the AWS including the requirement that Defendant properly pay Plaintiff Bledsoe and the Arizona Class all wages due.

69. Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly failing to pay Plaintiff Bledsoe and the Arizona Class members all wages due including those for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

70. Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Bledsoe and the Arizona Class members worked.

71. Plaintiff Bledsoe and the Arizona Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

72. As a result of Defendant's violations of the AWS, Plaintiff Bledsoe and other members of the Arizona Class have suffered harm and are entitled to recoup their unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with reasonable attorneys' fees and costs, pursuant to A.R.S. § 23-355.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, by and through her attorneys, demand judgment against Defendant, and in favor of the Plaintiff and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiff and all others similarly situated for the nature, extent, and duration of their damages, the costs of this action, and as follows:

a. approve this matter to proceed as a collective action with respect to Count I;

b. approve this matter to proceed as a class action with respect to Count II;

c. appoint Stephan Zouras, LLP and Martin & Bonnett, P.L.L.C. to serve as Class and Collective Counsel;

d. award judgment in favor of Plaintiff Bledsoe and against Defendant for an amount equal to Plaintiff Bledsoe's and the FLSA Class members' unpaid overtime compensation;

e. award judgment in favor of Plaintiff and against Defendant for an amount equal to Plaintiff's and Class members' unpaid wages pursuant to the applicable wage rates under Arizona's state law;

f. declare that Defendant's violations of the FLSA and Arizona wage and hour laws were willful;

g. award Plaintiff Bledsoe and members of the FLSA Class liquidated damages in accordance with the FLSA;

h. award Plaintiff and members of the Arizona Class treble damages in accordance with Arizona statutory provisions;

i. award prejudgment interest for the FLSA claims (to the extent that liquidated damages are not awarded);

j. award prejudgment interest for all state-law statutory wage claims (even if liquidated damages are awarded);

k. certify this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure and certify the Arizona Class set forth above;

l. award punitive damages to Plaintiff and the Arizona Class to the extent permitted by the Arizona law;

m. declare and find that Defendant willfully violated all applicable record keeping statutes;

n. issue all appropriate injunctive relief to prevent Defendant from violating the applicable and respective state-law statutory obligations, with ongoing oversight and continuing jurisdiction of the Court as needed, including requiring Defendant to pay for an audit of its record-keeping system;

    o. award Plaintiff Bledsoe reasonable attorneys' fees and all costs of the collective action, to be paid by Defendant, in accordance with the FLSA;

    p. award Plaintiff reasonable attorneys' fees and all costs of the Arizona Class action, to be paid by Defendant, in accordance with each applicable State's law;

    q. award pre- and post-judgment interest and court costs as further allowed by law;

    r. award a reasonable service award for Plaintiff to compensate her for the time and effort spent protecting the interests of other Clinicians, and the risks she has undertaken;

    s. grant Plaintiff and the Arizona Class leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

    t. provide additional general and equitable relief to which Plaintiff and the Arizona Class may be entitled; and,

    u. provide further relief as the Court deems just and equitable.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: September 12, 2018

Respectfully submitted,

By: /s/ James B. Zouras
James B. Zouras (will apply *pro hac vice*)
Ryan F. Stephan (will apply *pro hac vice*)
Teresa M. Becvar (will apply *pro hac vice*)
Catherine T. Mitchell (will apply *pro hac vice*)

*Plaintiff's Original Complaint—Class and Collective Action*

|   |   |
|---|---|
| 1 | STEPHAN ZOURAS, LLP |
| 2 | 100 N. Riverside Plaza, Suite 2150 |
|   | Chicago, IL 60606 |
| 3 | (312) 233-1550 |
|   | (312) 233-1560 *f* |
| 4 |   |

By: /s/ Daniel Bonnet
    Daniel Bonnett
    Michael Licata
    MARTIN & BONNETT, P.L.L.C.
    4647 N. 32nd Street, Suite 185
    Phoenix, AZ 85018
    Tel: (602) 240-6900

*Attorneys for Plaintiff and the Putative Class*